UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAWAN N. TARQUINII,                              :
                                                 :
       Plaintiff,                            :        Civil Action No.:     21-1567
                                                 :
       v.                                    :        Re Document No.:      31
                                                 :
CARLOS DEL TORO, in his official capacity        :
as U.S. Secretary of the Navy                    :
                                                 :
       Defendant.                            :

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

**I.  INTRODUCTION**

Plaintiff, proceeding *pro se*, alleges that Defendant[1] violated Title VII of the Civil Rights

Act of 1964 and the Rehabilitation Act of 1973 by terminating her employment at Marine Corps

Community Services in Iwakuni, Japan  in 2015.  *See* Compl. at 1–2, ECF No. 1.  Specifically,

Plaintiff alleges that her termination amounts to unlawful discrimination based on her race, sex,

religion, and disability status and retaliation for her protected equal employment opportunity

("EEO") activity.  *See id.*  Discovery in this matter closed on March 31, 2022, after which, at the

Court's direction, the parties continued to confer to attempt to resolve outstanding issues.  *See*

Sched. Order, ECF No. 16; Min. Order (Apr. 7, 2022).  With the parties at an impasse, on

September 19, 2022 the Court ordered Plaintiff to file a motion to compel on all remaining

discovery disputes.  *See* Min. Order (Sept. 19, 2022).  That motion is now ripe for consideration.

---

[1] Carlos Del Toro was automatically substituted as Defendant upon assumption of the
position of U.S. Secretary of the Navy pursuant to Fed. R. Civ. P. 25(d).

For the reasons set forth below, Plaintiff's Motion to Compel, ECF No. 31, is granted in part and denied in part.

## II. BACKGROUND

Plaintiff worked in human resources capacities, all Non-Appropriated Fund ("NAF") positions, for Marine Corps Community Services ("MCCS") in Iwakuni, Japan, from July 2013 to November 2015. *See* Compl. at 3; Def.'s Opp'n to Pl.'s Mot. Compel ("Def.'s Opp'n") at 1, ECF No. 32. In September 2014 she worked to facilitate a job fair for MCCS. Compl. ¶ 30(p); Answer ¶ 30(p), ECF No. 14. Plaintiff's spouse and brother interviewed for jobs and ultimately were hired. *See* Compl. ¶ 30; Answer ¶ 30. In November 2015, Plaintiff was terminated for "engaging in a pattern of misconduct that violated the rules of [*sic*] prohibiting nepotism and actual or apparent conflicts of interest" through actions "in connection with the employment of [her] husband and brother by MCCS." Compl. ¶ 31(a).

Plaintiff filed this suit on February 26, 2021 alleging violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* *See* Compl. at 1. She alleges that she was subjected to discrimination based on her race (African American), sex (female), disability (hypertension), and religion (Catholic), predominantly by her first-level supervisor, Robert Johnston, and her second-level supervisor, John Iwaniec. *See id.* at 10. She also claims that she engaged in several protected "EEO activities," such as reporting these instances of discrimination and objecting to similar treatment of others. *See id.* at 3–10. Accordingly, Plaintiff claims that her termination was not motivated by the alleged nepotism in facilitating the hiring of her husband and brother, but rather reflects discrimination based on her protected characteristics and retaliation for protected EEO activities. *See id.* at 10–11.

2

### III.  LEGAL STANDARDS

#### A.  Discovery Scope

Interrogatories, requests for production, and requests for admissions are all discovery devices governed by Rule 26(b)'s scope requirements and must be filed within the discovery window set by the Court.  *See* Fed. R. Civ. P. 26(b)(1), 33(a)(2), 34(a), 36(a)(1); *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104–05 (D.D.C. 2005).  "'The Federal Rules of Civil Procedure encourage the exchange of information through broad discovery.'"  *Ramirez v. U.S. Immigr. & Customs Enf't*, No. 18-cv-508, 2019 WL 11623990, at *1 (D.D.C. June 4, 2019) (quoting *In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004)).  Specifically, Rule 26(b) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

"Relevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.'"  *Breiterman v. U.S. Capitol Police*, 324 F.R.D. 24, 30 (D.D.C. 2018) (quoting *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016)).  Where a party seeks to compel a response to a discovery request, "[t]he party that brings the motion to compel 'bears the initial burden of explaining how the requested information is relevant.'"  *Felder v. Wash. Metro. Area Transit Auth.*, 153 F. Supp. 3d 221, 224 (D.D.C. 2015) (quoting *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007)).  "Once that showing has been made, 'the burden shifts to the non-moving party to explain why discovery should not be permitted.'"  *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 8 (D.D.C. 2017) (internal quotation marks omitted) (quoting *Felder*, 153 F. Supp. 3d at 224).

Proportionality is determined by weighing six factors:

(1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017); Fed. R. Civ. P. 26(b)(1).  "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional."  *Oxbow*, 322 F.R.D. at 6 (citation omitted).  To satisfy the burden of showing that a discovery request is not proportional, "the refusing party must make a specific, detailed showing."  *Lamaute v. Power*, 339 F.R.D. 29, 35 (D.D.C. 2021).

### B.  Discovery Devices

#### 1.  Interrogatories

"Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  A party responds "fully" to an interrogatory when it "provide[s] true, explicit, responsive, complete, and candid answers." *Equal Rts. Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007) (formatting omitted) (citation omitted).  "The party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete."  *Id.* (citation omitted).  The non-movant may respond that "they are unable to provide certain information . . . while identifying the information they possess," as "the Court cannot compel [it] to produce materials that it does not possess or information it does not have."  *Steele v. United States*, No. 14-cv-1523, 2022 WL 2817835, at *5 (D.D.C. July 19, 2022) (citation omitted).

#### 2.  Requests for Production

"For each item or category" requested, a party "must either state that inspection and related activities will be permitted as requested or . . . that it will produce copies of documents or of electronically stored information instead of permitting inspection," or else object.  Fed. R.

Civ. P. 34(b)(2)(B)–(C).  The responding party must conduct a "reasonable" search for the requested documents, but may stop when the extent of the search constitutes an "undue burden" that "would be disproportionate to the needs of [the] case." *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 90 (D.D.C. 2017).  "To the extent that documents do not exist, they are not discoverable." *Davis v. Yellen*, No. 08-cv-447, 2021 WL 2566763, at *20 (D.D.C. June 22, 2021).  However, the movant may present evidence "that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed." *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008).

### 3.  Requests for Admission

A refusal to admit "must specifically deny [the requested admission] or state in detail why the answering party cannot truthfully admit or deny it."  Fed. R. Civ. P. 36(a)(4).  "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."  *Id.*  While a party may not "object solely on the ground that the request presents a genuine issue for trial," *id.* at (a)(5), an "outright denial of each of the [requests for admission] at issue . . . fulfill[s] its obligations." *United States v. All Assets Held at Bank Julius Baer*, No. 04-cv-798, 2019 WL 1167743, at *5 (D.D.C. Mar. 13, 2019) (internal citations omitted).

## IV.  ANALYSIS

Plaintiff claims that Defendant's responses to numerous interrogatories, requests for production, and requests for admission are deficient.  The Court addresses each claim in turn.

## A.  Interrogatories

Plaintiff's motion implies an objection to Defendant's responses to interrogatory Nos. 1 and 2, *see* Pl.'s Mot. Compel ("Pl.'s Mot.") at 14, but Plaintiff's own notice of deficiency indicated that Defendant's response to No. 2 "is sufficient," Feb. 24, 2022 Notice of Deficiency at 2, ECF No. 31-4, so the Court focuses on the objection to No. 1.  In response to interrogatory No. 1, which asked who Plaintiff's supervisor "consulted prior to issuing the notice of proposed removal," Defendant responded that he "consulted with someone at MCCS Okinawa (does not recall the name) to obtain a template for the notice to use."  *See* Def.'s Disc. Resp. at 2, ECF No. 31-3.  Plaintiff claims this response is deficient because Defendant "failed to identify who 'someone' was."  Feb. 24, 2022 Notice of Deficiency at 2.  However, the Court "cannot compel him to remember something which he does not recollect," *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 309 F.R.D. 1, 13 (D.D.C. 2015), *aff'd sub nom. United States v. All Assets Held at Bank Julius*, 170 F. Supp. 3d 161 (D.D.C. 2016) (citation omitted), and Plaintiff points to no record evidence calling into question the sincerity of his assertion, so the Court denies Plaintiff's motion to compel as to interrogatory No. 1.

## B.  Requests for Production

### 1.  Nos. 1 and 4

Plaintiff alleges that Defendant's responses to request Nos. 1 and 4 are deficient because they do not contain any documents reflecting considerations of the *Douglas* factors in the decision to terminate her employment.  *See* Pl.'s Mot at 9.  The "*Douglas* factors" are 12 non-exhaustive factors that the Merit Systems Protection Board ("MSPB") has determined are "relevant to [the] appropriateness" of a government employer's decision to discipline an employee.  *Fogg v. Ashcroft*, 254 F.3d 103, 112 (D.C. Cir. 2001).  However, Defendant responds

that "[t]he fact that Defendant has no records containing any *Douglas* factors analysis for this case is . . . not surprising," as consideration of those factors "is not required for decisions to terminate [NAF] employees such as Plaintiff." Def.'s Opp'n at 6 (citing *Harper v. Army*, No. PH-3443-13-0342-I-1, 2013 WL 6870178 (M.S.P.B. July 29, 2013)). Plaintiff does not point to any evidence that Defendant did in fact consider the *Douglas* factors, so the Court denies Plaintiff's motion to compel as to requests for production Nos. 1 and 4.

### 2.  No. 5

In request No. 5, Plaintiff originally requested "[c]opies of any and all emails that were left in Plaintiff's work computer at the time of her removal on November 24, 2015," *see* Pl.'s Disc. Req. at 2, ECF No. 31-2, but has since refined her request to seek only emails between July 2013 and December 2015 in which the names of 60 individuals appear in either the "to," "from," "cc," or "bcc" lines.[2]  *See* Ex. G to Def.'s Opp'n, ECF No. 32-7.  As an initial matter, Defendant points out, and Plaintiff does not contest, that 30 of the 60 names requested by Plaintiff "are not . . . included in any allegations on the face of the Complaint," *see* Def.'s Opp'n at 9–10 & n.4, and Plaintiff's filings do not explain their relevance to this case.  Accordingly, Plaintiff has not met her burden to prove that emails from those 30 individuals are relevant and her motion to compel as to request No. 5 is denied with respect to these 30 individuals.[3]

As for the 30 individuals that are referred to in the Complaint, Plaintiff still has not shown that the records sought are relevant and proportional to the needs of the case.  To demonstrate disproportionality, Defendant ran a "quick search" for just five out of the 30 names,

---

[2] The time period is narrower for certain of the listed individuals.  *See* Ex. G to Def.'s Opp'n, ECF No. 32-7.

[3] These 30 individuals are identified in Defendant's opposition.  *See* Def.'s Opp'n at 10 n.4.

which returned almost 3,000 emails.  *See* Def.'s Opp'n at 11.  Plaintiff responds that she did enough by complying with the Court's previous instruction during an August 4, 2022 conference to refine the request to "include names and [a] time frame."  Pl.'s Reply at 5, ECF No. 33.  But the Court also explained during that conference that, "obviously, you [Plaintiff] don't need to get your hands on every email that you left behind," as "the majority of them are not relevant to this case."  Hr'g Tr. at 16, ECF No. 35.  The Court concluded by encouraging Plaintiff to work with Defendant to narrow the request to "see whether we can get some sort of agreement on this."  *Id.* Plaintiff has not done enough to assuage the Court's concern, as surely the majority of emails responsive to an unbounded request for all emails on which any of 30 email addresses appear over a multi-year period will not have anything to do with Plaintiff's case.  However, though it is loath to draw this process out further, the Court acknowledges that certain of these emails likely are relevant and proportional to the needs of Plaintiff's case, and accordingly instructs Defendant to search for and produce responsive records concerning these 30 individuals that hit on any variation[4] of the following search terms: discriminate, harass, misconduct, uncomfortable, mistreat, retaliate, EEO, hostile, discipline, performance, terminate, caution, violate.  *See* Def.'s Opp'n at 11 (suggesting that Plaintiff adopt a set of "search terms that would narrow communications only to relevant topics"); *see also* Fed. R. Civ. P. 26(e)(1)(B) ("A party who has. . . responded to a[] . . . request for production . . . must supplement or correct its disclosure or response . . . as ordered by the court.").

---

[4] That is, search terms should be structured to include all variations of the root word, either through use of a wildcard Boolean search character (*e.g.*, retaliat*) or by separately searching for different variations (*e.g.*, "retaliate," "retaliation," "retaliatory," etc.).

### 3.  Nos. 8 and 9

Request No. 8 seeks emails exchanged between Plaintiff's supervisors regarding Plaintiff

between January 1, 2015 and November 24, 2015.  *See* Pl.'s Disc. Req. at 2.  Request No. 9

seeks emails exchanged between the same supervisors regarding Plaintiff's "employment

reference, if any" between November 24, 2015 and December 31, 2017.  *Id.*  Defendant states

that it "conducted a reasonable search for responsive records and could not identify any emails

responsive to this request."  Def.'s Opp'n at 7–8; Def.'s Disc. Resp. at 10–11.  Plaintiff claims

this is "ludicrous," Pl.'s Reply at 4, but points to no supporting evidence, so the Court has no

basis on which to question Defendant's assertion and accordingly denies Plaintiff's motion as to

request Nos. 8 and 9.  *See Hubbard*, 247 F.R.D. at 29 (explaining that "[s]peculation that there is

more will not suffice" and that courts "insist[] that the documents that have been produced

permit a reasonable deduction that other documents may exist").

### 4.  Nos. 10, 11, and 15

Request Nos. 10 and 11 seek "any and all records showing actions taken by Robert

Johnston, if any, in response to Plaintiff's allegations" of sexual harassment and racial

harassment, respectively.  Pl.'s Disc. Req. at 2.  Request No. 15 seeks records showing "actions

taken in 2015, if any, regarding Plaintiff's sexual and/or racial complaints Plaintiff raised against

John Iwaniec."  *Id.* at 3.  Defendant states that it conducted a "reasonable search" for these

documents and "has not identified any documents responsive to this [r]equest."  Def.'s Opp'n at

13; Def.'s Disc. Resp. at 11, 13.  Plaintiff points to no evidence to suggest otherwise, so the

Court again has no basis on which to question Defendant's assertion.  *See Prasad*, 323 F.R.D. at

90 ("It is not the court's role to dictate how a party should search for relevant information absent

a showing that the party has abdicated its responsibility." (citation omitted)).   Plaintiff's motion

is denied as to request Nos. 10, 11 and 15.

### 5.  No. 12

While the parties group request No. 12 with request Nos. 10, 11, and 15 in their briefs,

No. 12 is meaningfully different.  It more broadly seeks "any and all records showing actions

taken, if any, in response to discrimination complaints raised by Plaintiff at any time during her

employment with Defendant."  Pl.'s Disc. Req. at 2.  Defendant seeks to parse the meaning of

"raised" in this sentence, suggesting that Plaintiff only sought records related to incidents in

which she herself was the complainant.  *See* Def.'s Opp'n at 14 (claiming that only after "several

meet and confers" did Plaintiff "explain[] that she is *also* requesting records related to corrective

actions taken in response to any discrimination complaint that Plaintiff submitted during the

course of her employment, including complaints made by other employees which she

investigated in the course of her position" (emphasis added)).  Accordingly, Defendant argues

that the "Court should not authorize a 'fishing expedition[]' into the disciplinary history of non-

parties to the litigation absent some demonstration that such parties are actually relevant."  Def.'s

Opp'n at 14 (citing *Breiterman*, 324 F.R.D. at 31).

The Court views the original request as seeking records showing actions taken in

response to discrimination complaints Plaintiff raised, even if someone else was the target of the

discriminatory conduct.  Request Nos. 10 and 11 seek records of actions taken in response "to

Plaintiff's allegations" of harassment.  Pl.'s Disc. Req. at 2.  Similarly, request No. 15 seeks

records showing actions taken "regarding Plaintiff's sexual and/or racial complaints Plaintiff

raised against John Iwaniec."  *Id.* at 3.  By contrast, request No. 12 uses different, broader

language seeking records of actions taken in response to "discrimination complaints raised by

Plaintiff." *Id.* at 2.  The Court declines to treat the difference in language as accidental.  The Court also finds that Plaintiff's supervisors' responses to discrimination complaints she raised are relevant based on their tendency to show or lead to other evidence that shows whether the proffered non-discriminatory explanation for her termination was pretextual.  *See Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016) (explaining that evidence that an employer's proffered non-discriminatory explanation is pretextual may include "the employer's better treatment of similarly situated employees outside the plaintiff's protected group" and "the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff") (citation omitted); *Fonville v. D.C.*, 230 F.R.D. 38, 44 (D.D.C. 2005) (explaining that "[i]nformation about how [defendant] demoted others and the procedures followed in other cases is—at the very least—'relevant to the subject matter' and 'reasonably calculated to lead to the discovery of admissible evidence'" (citing Fed. R. Civ. P. 26(b)(1)); *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 158 (D.D.C. 2003) ("Evidence that the defendant treated persons similarly situated differently may be relevant evidence of racial discrimination. Information that may permit such a comparison is 'reasonably calculated to lead to the discovery' of relevant evidence.  Fed. R. Civ. P. 26(b)(1) permits the discovery of both.").  And the presumably limited universe of records showing actions taken in response to discrimination complaints raised by Plaintiff sufficiently allays any proportionality concerns.  Accordingly, Plaintiff's motion to compel as to request No. 12 is granted and Defendant is directed to produce responsive records, to the extent they exist.[5]

---

[5] The Court notes that Defendant's response to Plaintiff's discovery request indicates that "Defendant has not identified any documents responsive to this [r]equest."  Def.'s Disc. Resp. at 12.  However, the response does not allege that Defendant undertook a reasonable search, and Defendant's opposition suggests that its response likely was based on the faulty premise that Plaintiff's request only encompassed complaints in which Plaintiff herself was the target of the

6.  No. 13

Request No. 13 seeks a "copy of the Family Care Investigation report Plaintiff submitted in connection with the hostile work environment allegations raised against Tim Cook, Senior Manager, Child Development Center in 2015."  Pl.'s Disc. Req. at 3.  Plaintiff states that the report, prepared in September 2015, determined that that the allegations were substantiated.  *See* Compl. ¶ 20.  However, Agency counsel disagreed with her and "pressured" her to revise the report.  *Id.*  Plaintiff alleges that thereafter she received a negative performance evaluation based on her work on the report.  *Id.* ¶¶ 20–21; *see also* Hr'g Tr. at 28–29, ECF No. 35.  Defendant argues that "[p]laintiff's allegations regarding the Family Care investigation and the allegedly retaliatory performance appraisal are time-barred, not exhausted, and therefore not properly before this Court."  Def.'s Opp'n at 16.  However, during a hearing on August 4, 2022, the Court indicated that it saw this report as relevant because part of the alleged motivation for termination was poor performance, so "to the extent that [the report] covers something that she was disciplined for . . . it would fall within that umbrella of poor performance."  Hr'g Tr. at 30–31, ECF No. 25.  Despite the Court's instruction to Defendant to "look at that in much closer detail," *id.* at 31, Defendant's opposition does not address the report's relevance as evidence of Plaintiff's performance quality.  Accordingly, the Court grants Plaintiff's motion to compel as to request No. 13 and orders a copy of the report produced.

7.  No. 14

Similar to request Nos. 1, 4, 10, 11, and 15, Defendant states that it "conducted a reasonable search" for records responsive to request No. 14 but did not identify any responsive

---

alleged discriminatory conduct.  *See* Def.'s Opp'n at 13–14.  Defendant must now conduct a reasonable search for records responsive to Plaintiff's request as construed by the Court above.

records.  Def.'s Opp'n at 7; Def.'s Disc. Resp. at 13.  Because Plaintiff has not pointed to any
evidence to refute Defendant's assertion, the Court denies Plaintiff's motion as to request No. 14.

### 8.  Nos. 16–24, 26, and 27

Request Nos. 16 and 17 seek "all termination notices issued by John Iwaniec" and "all
notices of proposed termination issued by Robert Johnston" in the five years prior to November
24, 2015.  *See* Pl.'s Disc. Req. at 3.  Request Nos. 26 and 27 seek "all Letters of Caution and
Performance Improvement Plans" issued by those individuals in that time period.  *Id*. at 4.  The
parties appear to have agreed to limit these requests to records pertaining to eleven individuals
(the "list of eleven").  *See* Pl.'s Mot. at 6, 12; Pl.'s Reply at 7.  In request Nos. 18–24, Plaintiff
also seeks "any and all disciplinary records" for seven of these eleven individuals (the "list of
seven").  Pl.'s Disc. Req. 3–4.  Plaintiff argues that the eleven individuals are "similarly situated"
comparators because they all "reported up the chain of command" to the same people,
"performed very similar job tasks and responsibilities in scope in the agency," "were subject to
the same employment rules, policies and procedures as Plaintiff," "were all under the same job
performance evaluation system as Plaintiff," and "had the same requirements in general for
required level of experience to obtain the job."  Pl.'s Reply at 7–8.

Defendant argues that more is required to establish that an employee is a relevant
comparator.  *See* Def.'s Opp'n at 19 ("Plaintiff has not demonstrated that any of the conduct of
her alleged comparators was similar to her own or that they shared supervisors or job duties and
responsibilities.").  But "'[t]he question of whether employees are similarly situated in order to
show pretext ordinarily presents a question of fact for the jury.'"  *Washington v. Wash. Metro.
Area Transit Auth.*, 330 F. Supp. 3d 232, 243 (D.D.C. 2018), *aff'd*, 788 F. App'x 1 (D.C. Cir.
2019) (citing *Wheeler*, 812 F.3d at 1115) (internal quotation omitted); *see also Waters*, 216

13

F.R.D. at 158 ("While it is certainly true that a Title VII *prima facie* case must . . . be based on a demanding standard of near identity between the plaintiff's situation and the situation of [an asserted comparator], it does not follow that a Title VII plaintiff must meet this standard as a condition of securing discovery.").  Plaintiff ultimately may not succeed in proving that any of these individuals is similarly situated, but for purposes of discovery, the Court finds that Plaintiff has alleged sufficient information concerning nine out of the eleven individuals to clear the low bar of relevance.  *See Fonville*, 230 F.R.D. at 44 (explaining that "[i]nformation about how [defendant] demoted others and the procedures followed in other cases is—at the very least— 'relevant to the subject matter' and 'reasonably calculated to lead to the discovery of admissible evidence'") (citing Fed. R. Civ. P. 26(b)(1)).  This list includes five employees who appear on the list of seven—Matthew Niedszeiecki, Jason Gardiner, Gary Holsopple, Andrew Chung, and Richard Courtenmanche—as well as two employees who appear only on the list of eleven— Marty Carter and Vincent Endresen—all of whom allegedly failed to properly administer or supervise certain programs in ways that cost MCCS money.  *See* Compl. ¶¶ 39–41, 43–46.  It also includes Tony Taylor, who appears on the list of seven and allegedly had an affair with his direct report that his supervisors knew about, *see id*. ¶ 47, and Sue Campbell, also on the list of seven, who allegedly faced discipline for failure to "take reported sexual harassment seriously," *id*. ¶ 48.  Accordingly, Plaintiff's motion to compel is granted as to records responsive to requests No. 18, 19, 20, 21, 22, 23, and 24, and records concerning these nine individuals responsive to requests No. 16, 17, 26, and 27, subject to the terms of the protective order.  *See generally* Protective Order, ECF No. 21.[6]

---

[6] Defendant's response to Plaintiff's discovery request invokes the Privacy Act, 5 U.S.C. § 552a, among its grounds for objecting to most of the above-listed requests.  *See* Def.'s Disc. Resp. at 14–23.  While Defendant does not raise this argument in its opposition, the Court notes

The Court denies Plaintiff's motion as to the two additional employees who round out the list of eleven—David Atkins and Jamie Wallace.  *See* Pl.'s Mot. at 6, 12.  Plaintiff alleges only that David Atkins "was terminated due to not being suitable," Compl. ¶ 42, and makes no allegations about Jamie Wallace's performance whatsoever, *see* Pl.'s Reply at 8 (stating only that Jamie Wallace was a "prior Chief of Human Resources which is the same job title as the Plaintiff").  This is not enough to show that records pertaining to these employees are relevant to Plaintiff's case.  *See Breiterman*, 324 F.R.D. at 31 (finding certain categories of comparator discovery sought "too far removed from [plaintiff's] alleged misconduct to 'yield information that would permit the plaintiff to argue the dissimilar treatment of the two situations is evidence of discrimination.'" (citation omitted)).  Defendant is not required to produce documents pertaining to these two individuals responsive to request Nos. 16, 17, 26, or 27.

### 9.  No. 25

Request No. 25 seeks "records gathered and reviewed by Col Robert Boucher, MCAS Iwakuni, to support the decision to uphold Iwaniec's decision to termination [*sic*] Plaintiff's employment."  Pl.'s Disc. Req. at 4.  While Plaintiff claims that Defendant "fail[ed] to produce any" records responsive to this request, Pl.'s Mot. at 13, Defendant's response indicates that it produced a set of responsive documents, *see* Def.'s Disc. Resp. at 22.  Plaintiff's reply attempts to recast her deficiency argument along the lines of request Nos. 1 and 4 above, arguing that Defendant's response was deficient for lack of records reflecting consideration of the *Douglas*

---

that the Privacy Act "does not create a qualified discovery privilege" that "replaces the usual discovery standards of the FRCP . . . with a different and higher standard."  *Lalalt v. McClatchy*, 809 F.2d 885, 888 (D.C. Cir. 1987); *see* 5 U.S.C. § 552a(b)(11) (permitting disclosure "pursuant to the order of a court of competent jurisdiction').  Where the Privacy Act would apply to records responsive to appropriate discovery requests, "[t]raditional devices such as protective orders . . . offer reliable means with which to limit liberal discovery principles."  *Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002) (citing *Laxalt*, 809 F.2d at 889).

factors.  *See* Pl.'s Reply at 8.  But, just as with request Nos. 1 and 4, Plaintiff does not point to

any evidence that Defendant in fact considered the *Douglas* factors, so the Court denies

Plaintiff's motion to compel as to requests No. 25.

### C.  Requests for Admission

#### 1.  Nos. 1–7, 11–17, 20–24, 26–29, and 32–34

Defendant denied each of the above-listed requests for admission.  *See* Def.'s Disc. Resp.

at 24–36.  Plaintiff argues that these denials are insufficient because "Defendant failed to explain

[its] denial responses."  Pl.'s Mot. at 14.  However, a party's "outright denial" in response to a

request for admission "fulfill[s] its obligations."  *All Assets Held at Bank Julius Baer & Co.*,

2019 WL 1167743 at *5 (internal citations omitted); *see also Foretich v. Chung*, 151 F.R.D. 3, 5

(D.D.C. 1993) (explaining, in reference to Fed. R. Civ. P. 36, that "the purpose of allowing

motions to challenge the sufficiency of responses is to clarify how an ambiguous response will

be treated so that each party is aware, as the litigation progresses, whether or not a particular

issue has been admitted or is still in dispute" but that "there is simply no provision of the Federal

Rules allowing a party to litigate a denied request for an admission").  Accordingly, Plaintiff's

motion to compel as to the above-listed requests for admission is denied.[7]

#### 2.  No. 25

Request No. 25 seeks Defendant's admission that, "[a]t the job fair held in September

2015 the applicants submitted their applications in electronic form."  Pl.'s Disc. Req. at 6.

---

[7] Plaintiff also claims that "Defendant . . . stated that [it] would revise [its] response" to request for admission Nos. 14, 16, 23, 24, 28, 29, and 32.  Pl.'s Mot. at 14.  However, Defendant only agreed to "re-review its answers to these Requests for Admission and amend them if necessary," Joint Status Report at 13, Sept. 16, 2022, ECF No. 30.  In line with this agreement, Defendant states that it "reviewed these requests and determined it is not possible to revise its responses."  Def.'s Opp'n at 20–21.

Defendant responds that this request is "not relevant to the claims or defenses in this case," as the "job fair at issue in this case occurred in 2014." Def.'s Disc. Resp. at 33. However, the Complaint states that "[o]n September 12, 2015, Plaintiff conducted a job fair exactly the same way as the year prior with the only difference being that applicants submitted electronic applications instead of submitting paper resumes." Compl. ¶ 30(w). Plaintiff thus appears to seek admission that the 2015 job fair utilized electronic applications for the limited support it provides to her argument that her conduct at that job fair was otherwise identical to her conduct at the job fair the prior year after which she faced disciplined. Construing relevance broadly as it must, *see Breiterman*, 324 F.R.D. at 30, the Court grants Plaintiff's motion to compel Defendant's response to request No. 25.

### 3.  Nos. 35–41

Request Nos. 35–41 seek admissions related to the list of seven purported comparator employees discussed above. *See* Pl.'s Disc. Req. at 7. Defendant objects on the same grounds discussed *supra* Section IV.B.8 that these individuals are not similarly situated to Plaintiff. *See* Def.'s Opp'n at 20. For the reasons explained above, the Court finds that Plaintiff has done enough to demonstrate that these requests are relevant and proportional to her case and therefore grants Plaintiff's motion to compel as to request Nos. 35–41.

## V.  CONCLUSION

For the foregoing reasons, the Court decides of each claim in Plaintiff's Motion to Compel, ECF No. 31, as follows:

- Interrogatory Nos. 1, 2: **DENIED**
- Requests for Production
  - Nos. 1, 4: **DENIED**
  - No. 5: **GRANTED IN PART AND DENIED IN PART**
  - Nos. 8, 9: **DENIED**
  - Nos. 10, 11, 15: **DENIED**

- o No. 12: **GRANTED**
- o No. 13: **GRANTED**
- o No. 14: **DENIED**
- o Nos. 16, 17, 26, 27: **GRANTED IN PART AND DENIED IN PART**
- o Nos. 18–24: **GRANTED**
- o No. 25: **DENIED**
- Requests for Admission
  - o Nos. 1–7, 11–17, 20–24, 26–29, 32–34: **DENIED**
  - o No. 25: **GRANTED**
  - o Nos. 35–41: **GRANTED**

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 9, 2023                                        RUDOLPH CONTRERAS
                                                            United States District Judge